[Cite as *Cleveland v. Goode*, 2026-Ohio-2824.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

CITY OF CLEVELAND,                          :

    Plaintiff-Appellee,              :

                                 No. 115873

    v.                               :

DEZIMEN GOODE,                              :

    Defendant-Appellant.             :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 23, 2026

---

Criminal Appeal from the Cleveland Municipal Court
Case No. 2025-TRC-013616

---

### *Appearances:*

Mark Griffin, Cleveland Director of Law, Aqueelah Jordan, Chief Prosecutor, and Aric Kinast, Assistant Prosecuting Attorney, *for appellee.*

Edward F. Borkowski, Jr., *for appellant.*

MICHELLE J. SHEEHAN, A.J.:

{¶ 1} Defendant-appellant Dezimen Goode appeals his conviction for operating a vehicle while under the influence ("OVI"), arguing that his conviction

was against the manifest weight of the evidence.[1]  After review, we overrule his assigned error and affirm the trial court's judgment.

## I. Procedural History and Relevant Facts

{¶ 2}  In August 2025, Goode was cited for two counts of OVI in violation of R.C. 4511.19(A)(1)(a) and (A)(2), both first-degree misdemeanors; one count of operating a vehicle without lights in violation of R.C. 4513.03, a minor misdemeanor; and not wearing a seat belt in violation of R.C. 4512.263(B)(1), a minor misdemeanor.  He pleaded not guilty to all charges, and the case proceeded to a bench trial where the following facts were presented.

{¶ 3}  Plaintiff-appellee City of Cleveland presented Trooper Prestia of the Ohio State Highway Patrol to testify.  Trooper Prestia had been an officer for the Ohio State Highway Patrol for about two and a half years.  He had made over 150 traffic stops of drivers who he suspected were driving while under the influence.  He also had training on standardized field-sobriety testing, advanced roadside impaired driving enforcement, and advanced cannabis training for impaired drivers.

{¶ 4}  Trooper Prestia testified that around 12:37 a.m. on the evening of August 14, 2025, he was patrolling on Interstate 71 North in a marked Ohio State Highway Patrol vehicle when he observed a vehicle with "no lights at all" on it enter the interstate.  He then observed the driver of the vehicle change lanes without using

---

[1] Although he claims in his assigned error that his "convictions were against the manifest weight of the evidence," he argues only that his OVI conviction was against the manifest weight of the evidence.

a turn signal. The driver then "weaved outside the lane to the left" and "continued weaving in the lane after that." Trooper Prestia activated his overhead lights and initiated a traffic stop of the vehicle.

{¶ 5} The City played Trooper Prestia's dash-camera video. The footage shows a white vehicle without any lights on it entering the highway from the right. There were four lanes of traffic on the highway where the vehicle entered. The white vehicle changed lanes from the far-right lane to the second lane from the right without signaling. The video then shows that Trooper Prestia changed lanes so that he was directly behind the white car in the second lane from the right. The white vehicle then crossed the left white line and went a significant distance into the second lane from the left. When the white vehicle crossed over the white line, it came very close to hitting another car that was traveling in the second lane from the left. Trooper Prestia continued to follow the white car as it exited Interstate 71 and entered Interstate 90 West. The dash-camera footage shows that the white car also weaved several times within the lane it was traveling. Trooper Prestia activated his overhead lights and stopped the white car.

{¶ 6} Trooper Prestia approached the driver's side of the vehicle. He asked Goode for his driver's license and told him why he pulled him over. Trooper Prestia said that he could smell alcohol and burnt marijuana coming from the vehicle. When Goode spoke, "the odor of alcoholic beverage became more apparent" from Goode's breath. Trooper Prestia said that both odors were coming from Goode's

person and the vehicle. Goode's eyes were also bloodshot, and he was slurring his speech.

{¶ 7} Trooper Prestia asked Goode where he had been prior to being pulled over, and Goode kept telling him that he and his passenger had been "traveling somewhere." Trooper Prestia said that Goode "did not answer the specific questions" even after asking him "multiple times."

{¶ 8} Trooper Prestia learned that there was a felony warrant for Goode's arrest. He asked Goode to step out of his vehicle. Upon searching Goode, Trooper Prestia found what he believed to be marijuana, although he said they never tested it to confirm it. Trooper Prestia said that Goode refused a breath-alcohol test and field-sobriety testing. Trooper Prestia arrested Goode for OVI.

{¶ 9} The City also played Trooper Prestia's body-camera footage. Trooper Prestia walked up the driver's side of the vehicle and asked Goode for his license. Trooper Prestia told Goode that his "lights were off" and he was "swerving all over the place." He also told Goode that he was not wearing his seatbelt. Trooper Prestia asked Goode where he and his passenger had been that night. Goode's answer is not clear on the video, but Trooper Prestia then asked Goode, "[W]here are you coming from though?" Again, it is not clear what Goode said, but Trooper Prestia stated that was not what he had asked him. After asking him several more times, Goode stated that they were just driving around. Trooper Prestia asked Goode how long he had

been drinking and if he had been "smoking weed" because it smelled like weed in the car. The backseat passenger stated that she "smokes."

{¶ 10} The body-camera footage then shows Trooper Prestia asking Goode to step out of his vehicle, which Goode did. Trooper Prestia told Goode that he had a misdemeanor and felony warrant for his arrest. As Trooper Prestia was searching Goode's person, Goode was trying to figure out why he had a felony warrant for his arrest. It was difficult to determine if Goode was slurring his words, but he was difficult to understand at times. He also misspoke a few of his words and had to correct himself. Trooper Prestia asked Goode if he would perform field-sobriety tests and "blow into a breath test," which Goode refused to do. At that point, Trooper Prestia told Goode that he was under arrest for OVI.

{¶ 11} At the close of all the evidence, Goode moved for a Crim.R. 29 acquittal, which the trial court denied.

{¶ 12} The trial court found Goode not guilty of one of the OVI counts (R.C. 4511.19(A)(2)) but guilty of the other three counts: OVI under R.C. 4511.19(A)(1)(a), operating a vehicle without lights, and not wearing a seat belt.

{¶ 13} For OVI, the trial court sentenced Goode to 180 days in jail, suspended 177 of them, and stated that Goode could complete a three-day driver-intervention program in lieu of jail time. The trial court also imposed fines for all three counts: $1000 for OVI, suspending $400 of it; $50 for operating a vehicle without lights; and $30 for not wearing a seatbelt. The court also placed Goode on

six months of probation with various conditions. It is from this judgment that Goode now appeals.

**II. Law and Analysis**

{¶ 14} In his sole assignment of error, Goode argues that his OVI conviction was against the manifest weight of the evidence.

{¶ 15} While the test for sufficiency requires a determination of whether the prosecution has met its burden of production at trial, a manifest-weight challenge questions whether the prosecution has met its burden of persuasion. *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997). Weight of the evidence addresses the evidence's "'*effect of inducing belief*.'" (Emphasis in original.) *Id*. at 387, quoting *Black's Law Dictionary* (6th Ed. 1990). "'[E]ven if a trial judgment is sustained by sufficient evidence, an appellate court may nevertheless conclude that the judgment is against the manifest weight of the evidence.'" *In re Z.C.*, 2023-Ohio-4703, ¶ 14, quoting *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 12.

{¶ 16} When a defendant argues that his or her conviction is against the manifest weight of the evidence, we "must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Id*., citing *id*. at ¶ 20. "However, '[r]eversal on the manifest weight

of the evidence and remand for a new trial are not to be taken lightly.'" *Id.* at ¶ 16, quoting *id.* at ¶ 31.

{¶ 17} Goode was convicted of OVI pursuant to R.C. 4511.19(A)(1)(a). This provision states that "[n]o person shall operate any vehicle . . . if, at the time of the operation . . . [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them." R.C. 4511.19(A)(1)(a).

{¶ 18} Goode argues that his OVI conviction was against the manifest weight of the evidence because there was no evidence of field-sobriety testing, no witness saw him drink alcohol or use marijuana, and he did not admit to using any substance. After reviewing the City's evidence, we disagree with Goode that his OVI conviction was against the manifest weight of the evidence.

{¶ 19} The trial court heard the testimony of Trooper Prestia. Trooper Prestia testified that he first observed Goode entering the highway after midnight without any lights on the vehicle. He then observed Goode change lanes without a signal and weave inside and outside of his lane. When Trooper Prestia stopped Goode's vehicle and approached the driver's side of the car, Trooper Prestia said that he could smell alcohol and burnt marijuana coming from the vehicle. Trooper Prestia further testified that when Goode spoke, "the odor of alcoholic beverage became more apparent" from Goode's breath. Indeed, Trooper Prestia clarified that both odors were coming from Goode's person and the vehicle.

{¶ 20} Trooper Prestia also testified that Goode's eyes were bloodshot, he was slurring his speech, and he refused to answer questions about where he had

been that evening. Upon searching Goode's person, he found what he believed to be marijuana in his pocket although they never tested it to confirm that it was marijuana. Goode also refused to take a breath-alcohol test or perform field-sobriety testing.

{¶ 21} Field-sobriety or chemical tests are not required to prove an OVI conviction. *Cleveland v. Giering*, 2017-Ohio-8059, ¶ 30 (8th Dist.), citing *Solon v. Hrivnak*, 2014-Ohio-3135, ¶ 17 (8th Dist.). Indeed, any lay witness, including a police officer, may testify as to whether an individual appeared intoxicated. *State v. Clark*, 2007-Ohio-3777, ¶ 13 (8th Dist.), citing *State v. Schmitt*, 2004-Ohio-37, ¶ 12, citing *Columbus v. Mullins*, 162 Ohio St. 419, 421 (1954). To establish that a driver of a vehicle is impaired, the prosecution may rely on physiological factors including slurred speech, bloodshot eyes, and the odor of alcohol. *Hrivnak* at ¶ 18, citing *Clark* at ¶ 13. A fact finder may also consider evidence that a driver refused to submit to field-sobriety or chemical testing as evidence of impairment. *Maumee v. Anistik*, 69 Ohio St.3d 339, 344 (1994); *State v. Assefa*, 2023-Ohio-385, ¶ 20 (1st Dist.); *State v. Holnapy*, 2011-Ohio-2995, ¶ 61 (11th Dist.); *State v. Vales*, 2020-Ohio-245, ¶ 77 (5th Dist.).

{¶ 22} The trial court also viewed the trooper's dash-camera and body-camera footage. These videos confirmed many of the facts that Trooper Prestia testified to.

{¶ 23} Goode further argues that Trooper Prestia's testimony was not credible. He asserts that the trooper's body-camera footage shows him "moving

steadily and speaking in a coherent manner." He claims that because Trooper Prestia told dispatch that Goode was not "falling over himself" and wondered whether Goode may be under the influence of a drug instead of alcohol, that proves that he lacked "reasonable suspicion that Goode was under the influence of something."

{¶ 24} We disagree with Goode's characterization of the video footage. The footage shows that Goode entered the highway at night without any lights on the vehicle, changed lanes without signaling, and crossed over the left white line a significant distance, almost hitting another car that was in that lane. And although the smell of alcohol and marijuana cannot be confirmed by the video, Goode did not clearly answer Trooper Prestia's questions about where he and his passenger had been that evening. Goode's speech was also difficult to understand, and he misspoke a few times when talking to Trooper Prestia outside of his vehicle. And the video confirms that Goode refused to take a breath-alcohol test or perform field-sobriety testing.

{¶ 25} After reviewing the evidence, we conclude that this was not "'the exceptional case in which the evidence weigh[ed] heavily against [Goode's OVI] conviction.'" *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶ 26} Goode's sole assignment of error is overruled.

{¶ 27} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, ADMINISTRATIVE JUDGE

KATHLEEN ANN KEOUGH, J., and
DEENA R. CALABRESE, J., CONCUR